Green, J.
delivered the opinion of the court.
In this case the counsel for the plaintiff in error contend that the proof clearly establishes: 1. That the mare charged to have been stolen, was at the time she was taken, lost from the owner, and out of his possession, either actual or constructive; and, 2. That the defendant was authorized to take her in possession, by the owner; and that therefore, in either case, there could be no trespass in the taking, and consequently no larceny.
1. As to the mare being out of the possession of the owner at the time she was taken. The evidence is, that Douglass, the owner of the mare, had turned her out in the spring, and was in the habit until the first of July, of salting her at a stump near Reynolds’; that she ranged during that time, east and south of the place where she *151 was salted; she was then taken hence to Jackson, and on the fourth of July salted at home, and turned out. Douglass neither saw or heard of his mare from that time until sometime in September. He had searched in her usual range several days for her, without success, and considered her as being lost. In September, on the Thursday after a camp-meeting, he was informed she was in Casseis’ old field, and had been there ever since July. This old field is two or three miles west of the place he had usually salted her. He went once to Casseis’ old field to look for her, but did not find her. He told plaintiff in error, he would pay him if he would get her and bring her to him. The mare was particularly described to plaintiff in error. One witness proves, that on the Saturday previous to the camp-meeting spoken of, he saw the mare in the possession of a man who was taking her away from Casseis’ old field; another witness is confident that he saw the mare in the old field on the Tuesday after said camp-meeting. The plaintiff in error proves by Turner, that he was with Casseis when he got the mare; that they met a man whom he did not know, in the road with her; that the person in possession of the mare, proposed to sell her, and that Casseis purchased her of him; that he did not know what Casseis gave for her, but saw him pay some money.
The indictment has two counts; the first charging that the plaintiff in error stole the mare, and the second charging that he received her knowing her to be stolen. He was convicted on the second, and acquitted on the first count. It is admitted on both sides, that the circuit judge charged the law correctly. The circuit court refused to grant a new trial, and the question for this court to determine is, whether the verdict of the jury was so manifestly against the law and evidence, as to authorize this court to reverse the judgment, because the court below refused to set it aside. It has been constantly held, and is the settled law of this court, that it will not *152 reverse a judgment of the inferior court for such cause , , J , , „ only, unless there be a great preponderance ox evidence against the verdict, so as to present a case of uncommon rashness on the part of the jury. Does this record present such a case? We do not think it does. Nay, it seems to us, that the verdict was justified from the facts here disclosed. It is not necessary to discuss any disputed question of law in order to the decision of this cause. Whether Cassels’ old field, where the mare was from July until September, is so remote from the usual range in which she had run during the early part of the summer, as that she could be considered as having strayed, gone beyond the constructive possession, and become lost to the owner, was a matter properly left for the consideration and decision of the jury. That Douglass considered her as lost, does not admit of a doubt; but whether she was so in fact, is another question. It cannot be admitted that a man’s property is so lost as to be in legal estimation out of his possession, merely because he has searched the place he had usually kept it, and not finding it, were to give it as his opinion that it was lost; such a doctrine would be preposterous. How often does it occur with us all, that an article of property about the house having been removed from its usual place, cannot be found after repeated searches, and yet, during the whole time we believe it lost, it remains in the house. Surely no one will insist that if it be taken from the house with felonious intent, during the time the owner thought it lost, that his opinion of its loss shall so place it out of his possession in legal contemplation as that the taking will not be larceny. How often does the owner search for a horse, or a hog in its usual range, without finding it; the only reason being, that he has not been sufficiently minute in his researches, for the beast may be all the time in its accustomed range.
In a case like this, some men would conclude that the animal was lost, while another would have great confi- *153 ¿fence he would yet find it: now shall the notion the , J r „ . . , , . owner may happen to tall into-, constitute the felonious taking the property a larceny or not a larceny, as his opinion as to whether it is lost or not, shall be the one way or the other? Surely not! The opinion of Douglass, therefore, as to whether his mare was lost or not, cannot alter the case. It must be left to be determined independently of that opinion, whether she had strayed from her usual range, as to be in fact lost and out of the possession of the owner. But upon this subject the evidence presents another view of the case, which obviates the difficulty as to whether the mare was lost. Suppose she were lost from July until September, at the time of the camp-meeting; at that time the owner was informed where she was. It cannot be contended, but that if the owner had known immediately after turning the mare out in July, that she went to this old field, and that he had all summer been apprised that she ranged there, but that the law wobld consider her all that time in his constructive possession. Then will not the communication of that knowledge to him in September, though he was ignorant of it in July and August, have the same effect as though he had possessed it all the time? We think so! If this be so, the only difficulty is whether the mare was taken before or after the communication of that knowledge to the owner. One witness states that hé saw a man taking her away on the Saturday previous to the camp-meeting, and another witness proves that she was in the old field on the Tuesday subsequent to it. It was for the jury to weigh this evidence, and to determine the disputed fact. We cannot say they did wrong, if they came to the conclusion that the mare was taken after Douglass was informed where she was; and if the fact be so, the taking would be a larceny.
But it is said the defendant had the permission of the owner to take the possession of the mare, and that therefore no larceny could be committed. Upon this part *154 0f the, case, it must be borne in mind that the defendant is of receiving the mare, knowing her to be stolen. The license the owner gave him to take her into possession, copld not extend to the thief who stole her. And a felony once having been committed by the person who stole her, no previous permission from the owner can excuse, the plaintiff in error from the consequences the law imposes, for having received her with felonious intent, knowing her to have been stolen. This license of the owner to the plaintiff in error, to take the mare, is not insisted on as lessening his moral guilt, but only as it repels the conclusion that a trespass was committed. Now the crime of which he is found guilty, does not ipclude a trespass, or require that he should commit one. But it is insisted that if the mare were stolen at all, she was stolen by the person unknown, at the instance and by the direction of the plaintiff in error, and that therefore, as Douglass authorized him to possess himself of the mare for an honest purpose, he had thereby authority to transfer his right to take her to the person unknown; so. as though she were taken with a felonious intent, yet the permission of the plaintiff in error prevents that taking from being a larceny. If the case supposed in the above proposition were to arise, it would be. found, we imagine, difficult to sustain its principles. The evidence does not show this to be such a case. There is ito proof in this record which shows that the, plaintiff In error and the person from whom he obtained the mare, had seen each other before that time. When he met the man with the máre, he must have known she was stolen, for Douglass had described her particularly to him. The. verdict therefore is. not repugnant to, but is justified by the evidence.
Judgment, affirmed.